# 13-0422-cv(L), 13-0445-cv(CON)

## United States Court of Appeals

*for the*

## Second Circuit

———————◆———————

THE NEW YORK TIMES COMPANY, CHARLIE SAVAGE, SCOTT SHANE,
AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES
UNION FOUNDATION,

*Plaintiffs-Appellants,*

– v. –

UNITED STATES DEPARTMENT OF JUSTICE, UNITED STATES
DEPARTMENT OF DEFENSE, CENTRAL INTELLIGENCE AGENCY,

*Defendants-Appellees.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS THE NEW YORK TIMES COMPANY, CHARLIE SAVAGE AND SCOTT SHANE

DAVID EDWARD MCCRAW
STEPHEN NATHANIEL GIKOW
THE NEW YORK TIMES COMPANY
*Attorneys for Plaintiffs-Appellants
The New York Times Company,
Charlie Savage and Scott Shane*
620 Eighth Avenue
New York, New York 10018
(212) 556-4031

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………..i

TABLE OF AUTHORITIES…………………………………………………..…..ii

PRELIMINARY STATEMENT……………………………………………………1

ARGUMENT……………………………………………………………………...2

    I.    DISCLOSING THE MERE EXISTENCE OF OLC
LEGAL MEMORANDA WILL NOT DISCLOSE ANY
CLASSIFIED INFORMATION, AND NOTHING IN THE
GOVERNMENT'S SUBMISSIONS JUSTIFIES ITS
GLOMAR RESPONSE TO THE NYT'S REQUESTS…………..2

    II.    NEITHER EXEMPTION 1 NOR EXEMPTION 3
PROVIDES A BASIS FOR WITHHOLDING LEGAL
ANALYSIS CONTAINED IN THE OLC DOD
MEMORANDUM…………………………………..………………9

    III.    THE GOVERNMENT's ARGUMENT MISCASTS THE
"WORKING LAW" DOCTRINE AND FAILS TO
RECOGNIZE THAT THE DOCTRINE APPLIES TO
RULES GOVERNING THE DECISION-MAKING
PROCESS, NOT TO THE "ULTIMATE DECISION"
IN AN INDIVIDUAL CASE………………………………………13

    IV.    THE GOVERNMENT HAS FAILED TO CARRY ITS
BURDEN OF SHOWING THAT THE OLC DOD
MEMORANDUM WAS NOT ADOPTED OR
INCORPORATED BY REFERENCE……………………………18

CONCLUSION………………………………………………………………..24

CERTIFICATE OF COMPLIANCE…………………………………………..26

i

# TABLE OF AUTHORITIES

## CASES

*ACLU v. CIA*, 710 F.3d 422 (D.C. Cir. 2013)…………………………………....3, 4, 5

*Brennan Center v. U.S. Dep't of Justice*,
  697 F.3d 184 (2d Cir. 2012)…………………………………………..passim

*Bronx Defenders v. Dep't of Homeland Security*,
  04 Civ. 8576 (HB),
  2005 U.S. Dist. LEXIS 33364 (S.D.N.Y. Dec. 19, 2005)………………......16

*Coastal States Gas Corp. v. Dep't of Energy*,
  617 F.2d 854 (D.C. Cir. 1980)…………………………………………..13, 15, 16

*Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
  489 U.S. 749 (1989)…………………………………………………………..14

*Donovan v. FBI*, 806 F.2d 55 (2d Cir.1986)………………………………………11

*Nat'l Council of La Raza v. Dep't of Justice*,
  411 F.3d 350 (2d Cir. 2005)……………………………………………..passim

*N.Y. Times v. Dep't of Justice ("Patriot Act Case")*,
  872 F. Supp. 2d 309 (S.D.N.Y. 2012)………………………………………...12

*Public Citizen, Inc. v. Office of Mgmt and Budget*,
  598 F.3d 865 (D.C. Cir. 2009)…………………………………………..16, 17, 23

*Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971)………………………………...11

*Sussman v. U.S. Marshals Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007)……………………………………………11

## STATUTES AND REGULATIONS

5 U.S.C. § 552 ………………………………………………………………....passim

55696

# OTHER AUTHORITIES

Department of Justice White Paper, *Lawfulness of a Lethal Operation Directed Against a U.S. Citizen Who Is a Senior Operational Leader of Al-Qa'ida or an Associated Force*………….....7-8

55696

## PRELIMINARY STATEMENT

This appeal by Appellants The New York Times Company, Charlie Savage, and Scott Shane (collectively, the "NYT") raises two narrow issues: (i) whether the Government should be required under the Freedom of Information Act ("FOIA") to disclose whether the Office of Legal Counsel ("OLC") has legal memoranda concerning targeted killings (in addition to the already-acknowledged OLC DOD Memorandum) and (ii) whether, with redaction, the abstract legal analysis contained in the OLC DOD Memorandum must be made public under FOIA.

The Government asserts that to merely reveal whether any other memoranda exist would disclose not merely that the CIA has an interest in targeted killings (a public fact) but whether the CIA was "operationally involved" (a secret, according to the administration). It also claims that abstract legal analysis is a national security secret. As set forth below, neither of those positions can be squared with the law or logic.

Secrecy may have its place in a democracy, but it also has its cost. By its overreaching, the Government denies the public the ability to know for itself whether its officials are following the rule of law when they target private individuals, including American citizens, for death. The public should not have to take the Government's word on a subject so vital.

1

55696

# **ARGUMENT**

## **I.**

## **DISCLOSING THE MERE EXISTENCE OF OLC LEGAL MEMORANDA WILL NOT DISCLOSE ANY CLASSIFIED INFORMATION, AND NOTHING IN THE GOVERNMENT'S SUBMISSIONS JUSTIFIES ITS GLOMAR RESPONSE TO THE NYT'S REQUESTS**

The NYT's request for documents is exceedingly narrow.  Unlike the ACLU's broader request, the NYT seeks only OLC legal analysis regarding targeted killings.  (Shane Requests at JA297; Savage Request at JA301.)[1]  The NYT has not requested any operational materials.  It has not requested anything from any intelligence agency.  At this point, the NYT is not even seeking the release of any documents (other than the already-acknowledged OLC DOD Memorandum).  Instead, it asks solely that DOJ be required to create a Vaughn index of responsive materials so that the NYT can then litigate with DOJ over whether the materials can be withheld under FOIA.

The Government, however, continues to assert that making such an index would disclose a secret.  It claims that providing an index would somehow reveal whether the CIA was "operationally involved" in the targeted killings.  (*See, e.g.*, Brief for Defendants-Appellees ("Gov't Brief"), Docket No. 95, at 40.)  But the Government has repeatedly failed to show how or why revealing whether legal

---

[1] The abbreviated citation formats used here are the same as those found in the NYT's initial brief.

2

memoranda exist would in any way disclose something that is secret or classified or otherwise properly exempt under FOIA.

There is no question that the United States has engaged in targeted killings – senior officials have repeatedly acknowledged as much.  (*See* Brief for Plaintiffs-Appellants Charlie Savage, Scott Shane, and The New York Times ("NYT Brief"), Dkt. No. 66, at 17-20; Decision at SPA18-29; Brief for Plaintiffs-Appellants the ACLU ("ACLU Brief"), Dkt. No. 75, at 10-25.)  In fact, since our initial brief, the President, the Attorney General, and others in the administration have specifically acknowledged that the United States targeted and killed Anwar al-Aulaqi in Yemen.  (Gov't Brief at 24.)  As part of that acknowledgment, those officials asserted that legal standards enunciated by the Department of Justice ("DOJ") were followed.  (*Id*.)[2]

In light of these disclosures, the Government no longer suggests that the CIA does not have at least an intelligence interest in the targeted killing program.  (*Id*. at 40.)  Indeed, earlier this year the District of Columbia Circuit found that that interest was perfectly clear.  Faced with a far broader request for documents in the CIA's possession, D.C. Circuit concluded that "[t]he CIA [had] proffered no

---

[2] While the Government questions whether subsequent disclosures are properly before the court (Gov't Brief at 46-48), the District of Columbia Circuit took judicial notice of similar statements in an analogous situation earlier this year, and the same should happen here given the significance of the public disclosures to the FOIA analysis.  *See ACLU v. CIA*, 710 F.3d 422, 431 n.10 (D.C. Cir. 2012).

3

reason to believe that disclosing whether it [had] any documents at all about drone strikes [would] reveal whether the Agency itself . . . operates drones." *ACLU v. CIA*, 710 F.3d 422, 429 (D.C. Cir. 2012); (*see also* Gov't Brief at 40; NYT Brief at 17-18.)   The court determined that the CIA had already officially acknowledged its intelligence interest in drone strikes, and thus there was no basis for its Glomar response. *ACLU*, 710 F.3d at 430-32.

Needing to escape that holding and its powerful logic, the Government looks in vain for a way to distinguish that case from the NYT's case.  The Government pins its hope on surgically separating CIA "interest" (which the D.C. Circuit found to be public and the Government acknowledges) from CIA "involvement" (which the Government claims is secret).  It argues that revealing whether OLC possesses legal analysis pertaining to targeted killings would disclose the CIA's involvement: "[D]isclosing whether OLC provided legal advice to the CIA would not reveal whether the CIA has an intelligence interest in that subject. . . .  Instead, it would reveal whether the CIA itself was operationally involved in lethal targeting operations or was authorized to conduct such operations against identified individuals, as well as CIA interest in specific operations against identified individuals."  (Gov't Brief at 40.) [3]

---

[3] It is also worth noting that Judge McMahon clearly believed that the *ACLU* case was factually analogous to this case, as she relied heavily on Judge Collyer's District Court opinion when she upheld the Government's Glomar response here.  (Decision at SPA62-66.)

4

That position is untenable.  First, the fact that the CIA is operationally involved in the targeted killing program is no secret.  High-ranking members of the Intelligence Committees in both the House and the Senate have confirmed the CIA's role.  (*See* ACLU Brief 12–13, 15–17, 18–19, 24 nn.9 & 10.)  But, more fundamentally, nothing about acknowledging the mere existence (or nonexistence) of OLC legal advice would reveal whether the CIA was operationally involved.  OLC cannot authorize any agency to take action; it can merely inform an agency what actions would be legal.  (Bies Dec. ¶2 at JA280.)  The CIA may have followed the legal advice, or it may have undertaken further deliberations; it may have engaged in targeted killings, or it may have abstained.  To the extent that DOJ is claiming that revealing the existence of these memoranda would disclose the CIA's involvement in specific targeted killing operations, redaction of the Vaughn index would adequately preserve whatever secrecy is required.  Clearly, then, "acknowledging the existence of responsive documents would not disclose whether the CIA operates drones, and accordingly . . . a Glomar response [is] not justified." (Gov't Brief at 40 (citing *ACLU*, 710 F.3d at 428-29).)[4]

Not surprisingly, the Government itself struggles to explain how revealing a list of documents containing legal analysis would blow the lid off secret

---

[4] Glomar does not require an either/or choice on disclosure. If information about even one document could be provided in a Vaughn index without implicating Exemptions 1 or 3, the Government's Glomar response is inappropriate.  (*See* ACLU Brief at 36, 44.)

operations.  At one point it claims that the list would reveal the CIA's "functions" or "intelligence sources and methods" and thereby trigger Exemption 3.  (Gov't Brief at 31.)  At other times the Government asserts that the list would "[tend] to disclose whether or not the CIA engaged in clandestine activities using targeted lethal force against terrorists."  (Gov't Brief at 32.)  At still other times the Government believes that disclosure would reveal "whether the CIA or other agencies had been authorized to use . . . force."  (Gov't Brief at 27.)[5]

All of these assertions of alleged harms are entirely conclusory, and the Government often just parrots the statutory language.[6]  More than that, the argument is premised on a fundamentally flawed characterization of OLC legal advice – as the Government well knows.  OLC does not force any agency to take certain actions, nor does it have the power to "authorize" certain behavior.  (*See* Bies Dec. ¶2 at JA280.)   Rather, it provides an agency with legal guidance on what actions would be legal or illegal.  If an agency decides to follow that legal guidance in order to ensure that its actions are legal, OLC's advice becomes the "working law" of the Government and dictates how agencies act.  (*See* Sections III

---

[5] This facile invocation of justifications for secrecy underscores the deeper problem of overclassification and why the public needs the courts to be a bulwark against unnecessary governmental secrecy.  (*See* Brief of *Amici Curiae* Reporters Committee for Freedom of the Press, Dkt. No. 84.)

[6] The lack of specific justifications in this context should be compared to those justifications offered in response to the ACLU's request, where the Government at least attempts to point discrete examples of what would be revealed.  (*See, e.g.*, Section I *infra* at 8; Gov't Brief at 17.)

6

and IV *infra*.)  But that agency decision – to engage in certain operations and to incorporate OLC's advice as its own policy – may or may not happen and will, in any event, occur after DOJ drafts the document.  Simply put, nothing in a legal memorandum, let alone in a Vaughn index, would reveal anything about whether an agency is engaged or not in the targeted killings.

The Government, of course, knows that an OLC legal memorandum, standing by itself, is not an agency operational manual, let alone one whose very existence must be kept secret lest harm results.  The Government makes that clear in its arguments concerning Exemption 5, where it spends significant time arguing that OLC's advice is non-operational.  (*See, e.g.*, Gov't Brief at 57.)  There, the Government argues that "the ultimate decision as to whether or in what circumstances to employ targeted lethal force is a policy decision that does not rest with OLC."  (*Id.* at 59.)  It cannot now double-back on its own argument and claim that the mere revelation that OLC advice exists will disclose what an agency has decided to do.

The fallacy of the Government's position on the Vaughn index comes into sharp focus when one considers the "White Paper" that was released by DOJ in February while this appeal was pending.  (*See* NYT Brief at 5 n.3; *id* at 5-6.)  Prior to the paper's release, it unquestionably could have been included on a Vaughn index (listed under its title "Lawfulness of a Lethal Operation Directed Against a

7

55696

U.S. Citizen Who Is a Senior Operational Leader of Al-Qa'ida or an Associated Force") without revealing "CIA involvement" in targeted killings. The Government fails to explain why the same would not be true for other responsive documents.

As for other harms cited by the Government, they are arguments directed at the ACLU request, not the narrow NYT requests for legal memoranda.[7] For example, the Government stresses how revealing "whether the CIA had intelligence of the threat posed by Anwar al-Awlaki could reveal information about the existence and identity of intelligence sources and methods." (Gov't Brief at 17; *see also id*. at 41.) Similarly, the Government trumpets the harms that lie in disclosing the number and nature of responsive documents in the CIA's possession. (*Id*. at 30.) These harms are undoubtedly overstated and attenuated, but they simply do not apply to the NYT appeal.

The Government repeatedly attempts to divert the Court's attention from the real issue before it, namely, what are the actual consequences of acknowledging the existence or nonexistence of OLC legal advice. And despite the Government's dire warnings, the reality is that nothing about disclosing the existence or nonexistence of OLC memoranda would reveal any national security secrets.

---

[7] The Government often addresses the two requests together and in so doing obscures the narrowness of the NYT request and the discrete legal issues it raises. The cases need to be addressed separately.

55696

## II.

### NEITHER EXEMPTION 1 NOR EXEMPTION 3 PROVIDES A BASIS FOR WITHHOLDING LEGAL ANALYSIS CONTAINED IN THE OLC DOD MEMORANDUM

The case for releasing the legal analysis contained in the OLC DOD Memorandum is built on a single, straightforward premise – abstract legal analysis is not properly classified as a national security secret – and culminates in a straightforward request for relief: that this Court review *in camera* the memorandum to determine whether classified operational material contained therein can be redacted so that the legal analysis can be disclosed.

The Government continues to insist that the legal analysis in the memorandum meets the two-prong test of Exemption 1: (a) the legal analysis "could reasonably be expected to cause identifiable or describable damage to the national security" and (b) it "pertains to" intelligence activities, sources, or methods. (Gov't Brief at 31.)  But nothing in the public filings advances the Government's argument for the first prong – a proposition that seems on its face dubious to anyone who has ever written legal analysis for a brief, research memorandum, or judicial decision.  Nowhere does the Government explain how, for example, national security might suffer "identifiable or describable damage" by the disclosure of even a single citation to a legal case, a single reference to an

9

abstract legal principle, or the lawyerly discussion of some concept derived from international jurisprudence.

Instead, the Government discusses why revealing the "number or nature" of documents requested by the ACLU would meet the first prong.  (*See id*. at 30.)  It says nothing at all about how disclosure of legal analysis in the DOD OLC Memorandum would meet the first prong other than to offer a sweeping warning that disclosure of any legal analysis could be expected to cause "serious and exceptionally grave damage to national security." (*See id*. at 31.)

The Government, like the District Court, chooses to focus on the "pertains to" second prong – an approach that is both truncated and in error.  (*See id*. at 31.) The court found that it was enough for the Government to establish that the legal analysis "pertains to matters that are themselves classified."  (Decision at SPA37.) As for the critical first prong – which would require some logical nexus between the release of legal analysis and the possibility of  "identifiable or describable damage" to national security – the District Court held that a court could do no more than examine the classification procedure: "It lies beyond the power of this Court to declassify a document that has been classified in accordance with proper procedures on the ground that the court does not think the information contained

55696

therein out to be kept secret." (Decision at SPA36.)[8] As discussed in our initial brief, that is not the law. (*See* NYT Brief at 25-26, 29-30.) A court has the power and duty to determine not merely whether classification procedures were followed but whether the "identifiable or describable damage" standard has been met – specifically, whether the Government has provided a "logical or plausible explanation" of the harm that could reasonably expected. (*See id.* at 25-30.) Abstract legal advice does not come within that standard.

To the extent that the OLC DOD Memorandum contains other information that is properly classified, it then falls to the Court to determine whether redaction can be employed so that the abstract legal analysis can be disclosed. *See, e.g., Donovan v. FBI*, 806 F.2d 55, 58 (2d Cir.1986) (agencies must "segregate their disclosable and non-disclosable portions" (internal quotation marks omitted)); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) ("Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld"); *Soucie v. David*, 448 F.2d 1067, 1077-78 (D.C. Cir. 1971) (non-exempt material may be protected only if it is "inextricably intertwined" with exempt information).

---

[8] The Government errs in suggesting that District Court reviewed more than procedural adequacy. (*See* Gov't Brief at 30 n.9.) While the court cited to a decision that referred to judges' role in assessing the plausibility of classifications (Decision at SPA36), the court never in fact addressed whether the legal advice contained in the OLC DOD Memorandum plausibly met the first prong of the Exemption 1 test.

55696

That same result applies even more clearly to Exemption 3, as shown by the Government's own brief, which implicitly acknowledges that abstract legal analysis standing alone would not fall within the bounds of "intelligence source or method." The Government concedes that Exemption 3 applies only to "the extent [legal analysis] incorporates information that would tend to reveal intelligent sources and methods." (Gov't Brief at 32.) But the Government stops there and never meaningfully explains why redaction would not work to remove any "incorporated" information about intelligence sources and methods from the legal analysis. Just as with Exemption 1, the proper remedy is not the complete withholding of the OLC DOD Memorandum but a determination through *in camera* review of whether the memorandum can be redacted to provide for public disclosure of the legal advice. *See N.Y. Times v. Dep't of Justice ("Patriot Act Case")*, 872 F. Supp. 2d 309, 318 (S.D.N.Y. 2012) (reviewing *in camera* whether legal analysis could be released with redaction).[9]

---

[9] The Government misrepresents the District Court's opinion in asserting that the court did not address whether Exemption 3 applies here. (*See* Gov't Brief 22 n.7.) The Government claims that "the court found it would be pointless to reach the [Exemption 3] issue given that 'Exemption 5 plainly applies'." To the contrary, the District Court did consider the issue and concluded that Exemption 3 did not apply to legal analysis. (*See* Decision at SPA45 ("In fact, legal analysis is not an 'intelligence source or method.'").) What the District Court found "pointless" was doing an *in camera* inspection of the OLC DOD Memorandum in light of its holding on Exemption 5. (*See id*. at SPA46 ("[*I*]*n camera* inspection would be pointless here, because Exemption 5 plainly applies").)

12

# III.

## THE GOVERNMENT's ARGUMENT MISCASTS THE "WORKING LAW" DOCTRINE AND FAILS TO RECOGNIZE THAT THE DOCTRINE APPLIES TO RULES GOVERNING THE DECISION-MAKING PROCESS, NOT TO THE "ULTIMATE DECISION" IN AN INDIVIDUAL CASE

The Government does not dispute the fundamental principle underlying the "working law" doctrine: If a document, even one that was originally deliberative and therefore subject to Exemption 5, sets forth what has become an agency's "effective law and policy" or is "routinely used by agency staff as guidance," it must be disclosed as working law.  *See Brennan Center v. U.S. Dep't of Justice*, 697 F.3d 184, 199-200 (2d Cir. 2012); *Nat'l Council of La Raza v. Dep't Justice*, 411 F.3d 350, 356-57 (2d Cir. 2005); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866, 868 (D.C. Cir. 1980).[10]  Instead, the Government advances two

---

[10]  The Government is particularly disingenuous in asserting that, based on a sentence in the NYT reply brief to the District Court, the NYT "conceded in district court that the government had satisfied its threshold burden to show that the document was privileged, absent adoption or incorporation by reference."  (Gov't Brief at 49.)  What the Government fails to tell the Court is that the parties later submitted supplemental briefings in the District Court to address this Court's decision in *Brennan*, 697 F.3d 184, which was handed down while this matter was *sub judice*.  In light of the expansion and clarification of the law in *Brennan*, the NYT argued in its supplemental submission: "The Government provides none of the process details that *Brennan* says are essential.  And without that proof, the Government cannot carry its burden for Exemption 5 withholding."  (NYT Letter Brief, October 10, 2012.)  As we point out in our initial brief here (NYT Brief at 35-39), the Government's failure to establish its entitlement to Exemption 5 provides an independent basis for finding the exemption inapplicable.  The Government's contention that it cannot provide any of the routine details about the creation of the OLC DOD Memorandum because to do so would expose national security secrets is implausible.  (Gov't Brief at 50.)  When it suits the Government's purposes, the Government is

13

arguments to counter the application of the doctrine to the OLC DOD Memorandum.

First, the Government contends the doctrine applies only to materials that have a "legal effect on private parties." (*See* Gov't Brief at 55-56.) Thus, disclosure is required only of those "rules governing relationships with private parties and [ ] demands on private conduct." (*See* Gov't Brief at 56 (citing *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772 n.20 (1989)).) In the Government's view, the legal analysis at issue here falls outside the doctrine because the DOD OLC Memorandum "does not opine on the legal rights of the public but rather serves to provide confidential legal advice to the Attorney General and the Executive Branch regarding the policy on the use of force." (Gov't Brief at 57.)

It is puzzling, to say the least, that the Government does not see the decision to kill a private party as having a "legal effect on a private party" or affecting the private party's "legal rights." It is equally puzzling that, under the Government's theory, a legal analysis that the Government relies on to provide due process for individuals targeted for killing is somehow not a "rule governing relationships" between private parties and the Government. Is there any more significant "legal

---

able to provide details about the memorandum's creation. (*See* Gov't Brief 57 n.17 ("[T]he OLC-DOD Memorandum was prepared by OLC for the Attorney General.").)

55696

right of the public" than the right not to be subjected to arbitrary and capricious execution by the Executive Branch?

In short, even if the Government were right about the reach of the working law doctrine, the OLC DOD Memorandum would still fall within its bounds. By setting the legal standards and decision-making process designed to protect the rights of private parties – including American citizens targeted for killing, as was the case in the al-Aulaqi drone strike – it defines the legal relations between the government and private parties.

In fact, however, the working law doctrine is not so narrow. The doctrine has been applied to memoranda that lay out the law to be followed by federal employees, whether or not the memoranda ultimately had a legal effect on a private party. For instance, in *Coastal Gas*, the documents at issue were Department of Energy ("DOE") legal memoranda "interpreting any applicable regulations in light of [facts provided by DOE auditors], and often pointing out additional factors which might make a difference in the application of the regulation." 617 F.2d at 859. DOE auditors continued to hold the authority to reject the advice in the individual cases before them. *Id*. at 859-60. The court found that the working law doctrine applied and required disclosure – even though the memoranda did not necessarily govern the conduct of the private parties subject to the audit.

15

55696

Even more telling is *Public Citizen, Inc. v. Office of Mgmt and Budget*, 598

F.3d 865 (D.C. Cir. 2009).   There, the working law doctrine required the

disclosure of documents concerning the legislative and budgetary clearance

policies applied by the Office of Management and Budget ("OMB") to federal

agencies.  598 F.3d at 874-875.  No private parties were involved in any fashion.

Similarly, in *Bronx Defenders v. Dep't of Homeland Security*, 04 Civ. 8576 (HB),

2005 U.S. Dist. LEXIS 33364 at *18-20 (S.D.N.Y. Dec. 19, 2005), the document

at issue concerned what information federal employees should enter into a criminal

database.  It addressed nothing about how agencies were to deal with private

parties, but the court found the document disclosable as the operating policy of the

agency.

The Government's attempt to cabin and reconfigure the working law

doctrine is contrary to established law.

Second, the Government finds the working law doctrine inapplicable to the

OLC DOD Memorandum because the "ultimate decision as to whether or in what

circumstances to employ targeted legal force is a policy decision that does not rest

with OLC."  (Gov't Brief at 59.)  That is no doubt true – but misses the point

entirely.  Here, we are not concerned with the ultimate decision, but with the law

and legally prescribed process that govern the decision-making.  In *Coastal Gas*, it

was irrelevant to the working law analysis what decision the auditor ultimately

16

made about the company being audited.  In *Public Citizen*, it did not matter for

purposes of the working law question how OMB ultimately handled the legislative

and budgetary review of any given agency.  The legal memoranda at issue in those

cases established the legal principles that had been adopted to guide Executive

Branch decision-making.  So too here.

John Brennan, the President's national security aide, put it as clearly as

possible: "'Office of Legal Counsel advice establishes the legal boundaries within

which we can operate.'"  (Gov't Brief at 59.)  Similarly, the Attorney General and

the President, in their recent disclosures about the targeted killings, have firmly

assured Congress and the public that certain killings were legal because the

Executive Branch had followed the necessary "legal standards . . . as determined

by 'Department of Justice lawyers'."  (*Id*. at 24.)

The import of those and similar statements is clear, and they lay out the

paradigmatic case for application of the working law doctrine: OLC advice

establishes the standards for determining when targeted killings are legal, the

Executive Branch has committed to following those standards, and therefore the

advice has become the "effective law and policy" and the "routinely used . . .

guidance" of the Government.  The OLC DOD Memorandum embodies that

advice and is thus disclosable, subject to redaction of operational detail,

17

irrespective of whether it was at one time protected under Exemption 5 as deliberative matter.[11]

# IV.

## THE GOVERNMENT HAS FAILED TO CARRY ITS BURDEN OF SHOWING THAT THE OLC DOD MEMORANDUM WAS NOT ADOPTED OR INCORPORATED BY REFERENCE

Independent of the working law doctrine, Exemption 5's protection of OLC memoranda can also be lost if the Executive Branch publicly adopts or incorporates by reference legal advice provided by OLC. *Brennan*, 697 F.3d at 201-02. As laid out in detail in the briefs of the ACLU, the Executive Branch has been on a two-year campaign to assure the American public and U.S. allies abroad not merely that the targeted killings are legal but that legal safeguards formulated by the Department of Justice govern their use. *La Raza* spoke directly to why such statements give rise to an obligation to disclose under FOIA: "Adopt[ing] a legal position while shielding from public view the analysis that yielded that position is offensive to FOIA." *La Raza*, 411 F.3d at 360 (internal quotation marks and citations omitted).

---

[11] The case for disclosure is particularly powerful when, as here, OLC memoranda are sought, given the special power of such memoranda to guide and rein in Executive Branch conduct. (*See* Brief of *Amici Curiae* Electronic Privacy Information Center and Seven Open Government Organizations in Support of Appellants and Urging Reversal (April 22, 2013), Docket No. 85.)

55696

In arguing that Exemption 5 applies to the OLC DOD Memorandum, the Government asserts that compelled disclosure "would have the perverse effect of deterring agencies from describing the legal basis for their conduct publicly out of concern that such explanations would risk removing the protection of the deliberative process and attorney-client privilege for any arguably related predecisional advice." (Gov't Brief at 54.) The Government's argument is wide of the mark in two respects.

First, the argument ducks the real question: Is the advice predecisional when the Executive Branch is publicly describing it as the policy and standards followed by the administration? As discussed in our original brief (NYT Brief at 33-34, 49-50), the protection of Exemption 5 drops away when the advice becomes policy. Here, as the Government's brief makes plain, the OLC legal advice is no longer part of a deliberative give-and-take but a keystone in an adopted governmental policy for assuring that the targeted killings comport with the law.

Second, the "perverse effect" that should concern this Court is not the one proffered by the Government (Gov't Brief at 54), but the same one that gave rise to this Court's decision in *La Raza*: The Executive Branch should not be permitted to provide facile public assurances that it is following policy and standards set by OLC but never have to disclose what OLC actually said. Without disclosure, the Executive Branch gets to have it both ways: publicly stating that OLC is watching

19

out for the rule of law but escaping all public scrutiny as to whether that is in fact

so.

*Brennan*, like *La Raza*, is specifically aimed at preventing that.  An agency

faces a "political or public relations calculation" in deciding whether to discuss the

rationale for a decision.  *Brennan*, 697 F.3d at 205.  The agency can say nothing.

But if it chooses to speak and points to protected material as authoritative, it cannot

evade its obligations under FOIA to disclose material that provides the rationale.

*Id.*  Clearly, the Executive Branch has chosen to speak and to tell the world that

"Office of Legal Counsel advice establishes the legal boundaries within which we

can operate." (Gov't Brief at 59.)  The issue, then, is whether that public

invocation of OLC's advice is sufficient to serve as adoption/incorporation of the

legal analysis contained in the OLC DOJ Memorandum and trigger disclosure.

As it has in the past, the Government argues that there has been no adoption

or incorporation by reference because no governmental official has expressly

mentioned the OLC DOD Memorandum.  (*See id.* at 51-52.)   The Government

notes that in *Brennan* this Court ordered release of a document that was expressly

mentioned in public statements and declined to release two documents that were

not referenced explicitly.  (*Id.* at 52.)  But the absence of express mention was not

the deciding factor in respect to the latter two documents.  Instead, this Court

declined to release them because they were not adopted as agency policy:  "In sum,

20

there is no evidence that USAID or HHS based its change in policy on the draft memoranda plaintiff seeks. We therefore cannot conclude, as did the district court, that either agency expressly adopted or incorporated by reference these drafts in explaining their policy change." *Brennan*, 697 F.3d at 206. Not only had the two memoranda not been adopted as agency policy, they had never been finalized. *Id*.

Contrary to what the Government suggests in discussing *Brennan*, the test for determining whether there has been express adoption or incorporation by reference remains the all-facts-and-circumstances formula set forth in *La Raza*, 411 F.3d at 357 n.5. (*See* NYT Brief at 45-47.) One of those considerations is express or explicit mention; it is not the only factor or the deciding one.[12]

Here, the record shows that the OLC DOD Memorandum provides legal analysis "regarding the policy on the use of force." (Gov't Brief at 57.) It was shared with the Executive Branch. (*Id*.) The Executive Branch has publicly stated that advice from OLC "establishes the legal boundaries within which we can operate." (*Id*. at 59.) The memorandum was also provided to the Attorney General, who has publicly discussed the process for assuring the legality of

---

[12] The Government acknowledges that *La Raza* eschewed a bright-line test, but continues to argue that adoption must be "express and explicit." (*See* Gov't Brief at 53.) That is belied by the language of *La Raza* itself: "While the Department urges us to adopt a bright-line test – whereby a document may be deemed expressly adopted or incorporated only in the event that an agency, in essence, uses specific, explicit language of adoption or incorporation – such a test is inappropriate because courts must examine *all* the relevant facts and circumstances in determining whether express adoption or incorporation by reference has occurred." *La Raza*, 411 F.3d at 357 n.5 (emphasis in the original).

targeted killing and for providing due process to targeted individuals. (*Id*. at 59; Decision at SPA22-25.) The Government has never suggested that the OLC DOD Memorandum is some sort of outlier, offering a legal analysis that is inconsistent with the public statements of the Attorney General and others. Indeed, it would be illogical to think that was so.

Importantly, *Brennan* made clear that adoption/incorporation cases are no different than other FOIA cases: The burden rests with the Government to prove that Exemption 5 applies. 697 F.3d at 201-02. Specifically, the Government has the burden of showing that the OLC DOD Memorandum does not set out the rationale for the legal positions now adopted publicly by the administration, just as the agencies in *Brennan* were required to show not merely that the two withheld memos were not mentioned but also that they were never finalized nor came to be accepted as agency policy. 697 F.3d at 202, 206-07.

Rather than carry that burden, the Government, like the District Court, improperly shifts the burden to the NYT to show that the "legal reasoning being discussed [in public] is the reasoning" contained in the OLC DOD Memorandum. (*See* Gov't Brief at 53; Decision at SPA60.) In other words, the administration believes that it is free to publicly invoke – and aggressively promote its reliance upon – the advice of the OLC but shield that advice from public scrutiny unless

22

either (a) some official mentions a particular OLC memo by name or (b) a FOIA plaintiff already knows what the withheld memorandum says.

That cramped view of the law – which simply encourages officials to play games and avoid specific references to documents – undermines the public policy concerns that illuminated *La Raza* and *Brennan*.  More than that, it misreads the law.  The ultimate focus of the adoption/incorporation analysis is not on whether a particular document was publicly cited but whether "*the contents* of the document *have been 'adopted*, formally or informally, as the agency position on an issue or [are] used by the agency in its dealings with the public.'" *Brennan*, 697 F.3d at 195 (quoting *La Raza*, 411 F.3d at 356-57); *see also Public Citizen*, 598 F.3d at 876 ("A document that does nothing more than explain an existing policy cannot be considered deliberative.").

Having taken a public position that overtly relies on OLC advice as its rationale and having failed to establish, as it must under *Brennan*, that the OLC DOD Memorandum does not set forth that rationale, the Government is not entitled to invoke Exemption 5 here.

55696

## CONCLUSION

For each of the reasons set forth here and in our initial brief, the NYT respectfully asks this Court to (i) reverse the judgment below granting DOJ summary judgment and denying partial summary judgment to the NYT; (ii) declare that the OLC DOD Memorandum is public under 5 U.S.C. § 552 and order DOJ to provide the memorandum to the NYT within 20 business days, or, alternatively, conduct an *in camera* review to determine which portions of the memorandum may be segregated for release; (iii) direct DOJ to provide a Vaughn index as to any additional documents that were subject to the Glomar responses and permit further challenge in the District Court to any withholding by DOJ; (iv) award the NYT the costs of these proceedings, including reasonable attorney's fees, as expressly permitted by 5 U.S.C. § 552(a)(4)(E); and (v) grant such other and further relief as the Court deems just and proper.


Dated:       New York, NY
             June 28, 2013

                        Respectfully submitted,

                        By: _____s/ David E. McCraw_____
                             David E. McCraw
                             Stephen N. Gikow
                             Legal Department
                             The New York Times Company
                             620 8th Avenue - 18th Floor

55696

New York, NY 10018
phone: (212) 556-4031
fax: (212) 556-1009
e-mail: mccrad@nytimes.com
Counsel for Appellants

25

55696

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limitation of Rule

32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 5,912

words, excluding the parts of the brief exempted by Fed. R. App. P.

32(a)(7)(B)(iii).

Dated:  June 28, 2013

Respectfully submitted,

By: __s/ David E. McCraw_____
        David E. McCraw
        Legal Department
        The New York Times Company
        620 8th Avenue - 18th Floor
        New York, NY 10018
        phone: (212) 556-4031
        e-mail: mccrad@nytimes.com
        Counsel for Appellants

55696